UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------

| | |
|---|---|
| PFG VENTURES, L.P., : | |
| : | Case No. 1:20-cv-2183 |
| Plaintiff, : | |
| : | |
| vs. : | OPINION & ORDER |
| : | [Resolving Doc. 4] |
| THOMAS E. RIZZI, et al., : | |
| : | |
| Defendants. : | |

-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this non-competition agreement case, Plaintiff PFG Ventures, L.P sues Defendant Thomas Rizzi, a former PFG executive, along with arguable-PFG-competitors Defendants Petty Marketing Group, LLC, and Petty Medical Group, LLC (collectively "Petty Defendants").[1] Plaintiff PFG claims that Defendant Rizzi violated his PFG non-competition agreement by accepting a position with Defendant Petty Medical less than a month after leaving PFG.[2] PFG also claims that both Petty Defendants knowingly interfered with Rizzi's non-compete by participating in the decision to hire him.[3]

Petty Defendants, Tennessee citizens with virtually no present Ohio operations, now move to dismiss the complaint for want of personal jurisdiction.[4] Plaintiff PFG opposes,[5] and Petty Defendants reply.[6] For the reasons presented below, the Court **GRANTS** Petty Medical's dismissal motion and **DENIES** Petty Marketing's dismissal motion.

---

[1] Doc. 1-1.
[2] *Id.* at 6–7.
[3] *Id.* at 7.
[4] Doc. 4.
[5] Doc. 5.
[6] Doc. 6.

Case No. 1:20-cv-2183
Gwin, J.

## I. BACKGROUND

This case requires the Court decide whether the related, but separate, Petty Defendants have Ohio connections sufficient for personal jurisdiction. For purposes of this motion, the Court works from Plaintiff PFG's version of events.

Plaintiff PFG, an Ohio corporation, franchises businesses that sell printed products.[7] After selling a franchise, PFG assists the franchisee with establishing its business operations.[8]

In August 2014, Defendant Petty Marketing purchased a PFG franchise.[9] In preparation for the franchise agreement, PFG assisted Petty Marketing in getting its business up and running.[10] As part of that process, Petty Marketing representatives traveled to PFG's Ohio headquarters for two May 2014 all-day meetings.[11] PFG and Petty Marketing representatives also frequently exchanged emails.[12]

During this same period, on or about June 13, 2014, Plaintiff PFG hired Defendant Rizzi as its Chief Sales Officer.[13] Rizzi's PFG employment contract included a non-competition provision effective during Rizzi's PFG employment and two years thereafter.[14] The non-compete provided that Rizzi would not "own, manage, operate, join, control, or participate in the ownership, management, operation or control of, or be employed by or connect in any manner with any Competing Business" during the operative period.[15]

---

[7] Doc. 5-1 at 3.
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.* at 3–4.
[13] Doc. 1-1 at 4.
[14] *Id.* at 5.
[15] *Id.*

-2-

Case No. 1:20-cv-2183
Gwin, J.

The agreement limits the prohibited "Competing Business" to any "business or entity . . . engaged in the United States or Canada in commercial printing, promotional products, . . . which competes with PFG where such business or entity has aggregated annual sales over $40,000,000."[16]

The agreement also subjects Defendant Rizzi to the personal jurisdiction of the Cuyahoga County Court of Common Pleas and this Court.[17]

Over the course of its PFG franchise agreement, Defendant Petty Marketing worked with Defendant Rizzi.[18] Approximately three years into Petty Marketing and Rizzi's respective PFG relationships, Petty Marketing again sent representatives to Ohio for an April 3 and 4, 2017 meeting.[19] Defendant Rizzi was also present at the meeting on PFG's behalf.[20]

Defendant Petty Marketing chose to end its PFG franchise in May 2019.[21] Thirteen months later, in late June 2020, Defendant Rizzi resigned from PFG.[22]

In July 2020, Rizzi began working for Defendant Petty Medical, a new and separate Tennessee limited liability company formed on July 1, 2020, but having common ownership and management with Petty Marketing.[23]

Believing that Rizzi had breached his non-compete by accepting a Petty Medical job and that Petty Defendants both had knowingly interfered with Rizzi's non-compete by

---

[16] *Id.*
[17] Doc 1-1. at 4.
[18] Doc. 5-1 at 4.
[19] *Id.*
[20] *Id.*
[21] Doc. 6-1 at 1.
[22] Doc. 5-1 at 4.
[23] *Id.* at 5.

-3-

Case No. 1:20-cv-2183
Gwin, J.

participating in the Rizzi hiring decision, PFG filed suit against Rizzi and Petty Defendants in Cuyahoga County.[24] Defendants then removed the case to this Court.[25]

Petty Defendants now move to dismiss the case for want of personal jurisdiction over them.[26] Plaintiff PFG opposes,[27] and Petty Defendants reply.[28] The Court now takes up the dismissal motion.

## II.     DISCUSSION

Federal courts apply the forum state's law, tempered by due process considerations, to decide whether they have personal jurisdiction over a defendant.[29] Personal jurisdiction may be general or specific.[30] Plaintiff PFG makes no argument that this Court has general jurisdiction over Petty Defendants. This Court considers only whether it has specific jurisdiction.

Petty Defendants effectively concede that Ohio's long-arm statute[31] gives the Court specific personal jurisdiction.[32] The only question, then, is whether such personal jurisdiction is consistent with due process.[33]

The Sixth Circuit uses a three-part specific jurisdiction test:

(1) The defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state;

---

[24] Doc. 1-1.
[25] Doc. 1.
[26] Doc. 4.
[27] Doc. 5.
[28] Doc. 6.
[29] *See Parker v. Winwood*, 938 F.3d 833, 839 (6th Cir. 2019).
[30] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).
[31] Ohio Rev. Code § 2307.382.
[32] Doc. 4 at 6 ("Ohio's Long Arm Statute likely authorizes jurisdiction because the Petty Defendants transact *some* business—albeit limited—in Ohio.").
[33] *Parker*, 938 F.3d at 839.

-4-

Case No. 1:20-cv-2183
Gwin, J.

>   (2)   The cause of action must arise from the defendant's activities there; and
>
>   (3)   The acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.[34]

The Court considers each of these factors in turn.

>   1. *Purposeful availment.*

Specific jurisdiction is appropriate if Petty Defendants have "purposely availed [themselves] of the privilege of acting in the forum state or causing a consequence in the forum state."[35] While "random," "fortuitous," or "attenuated" forum state contacts do not justify specific jurisdiction, "where a defendant has created continuing obligations between himself and the residents of the forum, he manifestly has availed himself of the privilege of conducting business there."[36] Intentional tortious conduct directed at the forum state, moreover, "enhances a party's other contacts with the forum state for purposes of a purposeful availment analysis."[37]

Plaintiff PFG sues both Defendant Petty Marketing and Defendant Petty Medical, separate companies. Each Defendant's Ohio contacts must be assessed individually.

First, Petty Marketing. Petty Marketing entered a multi-year franchise agreement with Plaintiff PFG, an Ohio corporation. Under that agreement, Petty Marketing sold PFG-affiliated products after sending representatives to Ohio to discuss business strategy. Petty

---

[34] *Air Prods. and Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 550 (6th Cir. 2007).
[35] *Id.* at 551 (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).
[36] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985).
[37] *Air Prods.*, 503 F.3d at 553.

Case No. 1:20-cv-2183
Gwin, J.

Marketing also regularly sent communications into Ohio while getting its franchise up and running. During this time, Petty Marketing worked closely with Defendant Rizzi, PFG's Chief Sales Officer.

Petty Marketing control persons also arguably induced Defendant Rizzi to breach his PFG non-compete agreement. Because of the parties' prior business relationship, Petty Marketing knew that Plaintiff was Ohio headquartered, where Rizzi had worked and where the brunt of any tortious inference harm to business relationship would materialize if Petty Medical hired Rizzi. Although Petty Medical hired Rizzi, PFG says Petty Marketing was involved with the solicitation.

These facts sufficiently support Petty Marketing's purposeful availment of Ohio law to support personal jurisdiction. The multi-year franchise agreement is an example of a "continuing obligation[] between [Petty Marketing] and the residents of [Ohio]," that show Petty Marketing "manifestly . . . availed [itself] of the privilege of conducting business there."[38]

These contacts are "enhanced" by Petty Marketing's supposed interference with Rizzi's non-compete.[39] Petty Marketing's long-running relationship with Plaintiff PFG, an Ohio corporation, and Petty Marketing control persons' later decision to later hire Defendant

---

[38] *Burger King*, 471 U.S. at 476; *see also Air Prods.*, 503 F.3d at 551 ("In this case, the parties did not engage in a one-time transaction, but in a continuing business relationship that lasted a period of many years. Defendants reached out beyond Kansas' borders to conduct business with a company whose principal place of business it knew to be in Michigan. Such contacts are not "random," "fortuitous," or "attenuated," but are the result of deliberate conduct that amounts to purposeful availment.").
[39] *Air Prods.*, 503 F.3d at 553.

-6-

Case No. 1:20-cv-2183
Gwin, J.

Rizzi with knowledge that it could potentially violate his non-compete should have led Petty Marketing to "reasonably anticipate being haled into" Ohio court.[40]

In contrast, PFG's arguments for jurisdiction over Petty Medical focus largely on Petty Marketing's Ohio contacts. Petty Medical itself has seemingly no Ohio contact or business. PFG, however, claims that Petty Medical should be considered an alter-ego of Petty Marketing and argues that this Court should find that Petty Marketing's Ohio contacts subject Petty Medical to Ohio jurisdiction.

Crucially, however, courts have expressed "a reluctance to exercise personal jurisdiction over a subsidiary merely because its parent corporation is doing business in the forum state."[41] In general, courts find jurisdiction over a related corporation not otherwise subject to jurisdiction only when the related companies showed disregard of corporate separateness in a way that would allow the corporate form to be pierced.[42]

"If corporate formalities are substantially observed and the parent company `does not exercise an unusually high degree of control over the subsidiary,' a parent and a subsidiary are considered as two separate entities for purposes of personal jurisdiction."[43] "To satisfy the alter-ego test, [a plaintiff] must demonstrate unity of interest and ownership that goes beyond mere ownership and shared management personnel."[44] "The alter-ego theory

---

[40] *Third Nat. Bank in Nashville v. WEDGE Gr. Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).
[41] 4A Wright & Miller, Fed. Prac. & Proc. Civ. § 1069.4 (4th ed. 2020).
[42] *See id.*
[43] *Eco Pro Painting, LLC v. Sherwin-Williams Co.*, 807 F. Supp. 2d 732, 736 (N.D. Ill. 2011) (quoting *Cent. States, Se. and Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 944 (7th Cir. 2000)).
[44] *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 849 (6th Cir. 2017) (citation and quotations omitted).

Case No. 1:20-cv-2183
Gwin, J.

provides for personal jurisdiction if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction."[45]

Relevant factors for piercing separate corporate identities include: (1) sharing the same employees and corporate officers; (2) engaging in the same business enterprise; (3) having the same address and phone lines; (4) using the same assets; (5) completing the same jobs; (6) not maintaining separate books, tax returns, and financial statements; and (7) exerting control over the daily affairs of another corporation.[46]

Here, Plaintiff PFG has not alleged or shown that Petty Defendants have failed to observe corporate formalities to such an extent that Petty Marketing's Ohio contacts can be attributed to Petty Medical. Petty Medical's sole Ohio contact, therefore, is hiring Rizzi. This single action is insufficient to show Petty Medical's purposeful availment of Ohio law. This Court therefore lacks personal jurisdiction over Petty Medical.

2. *Arising from.*

For specific jurisdiction, Petty Marketing's purposeful availment must be related to the present cause of action.[47] But the relationship need not be direct causation.[48] Rather, it is sufficient that Petty Marketing's forum contacts and the cause of action "have a substantial connection."[49] In other words, if Petty Marketing's "contacts with the forum state are related

---

[45] *Indah v. S.E.C.*, 661 F.3d 914, 921 (6th Cir. 2011) (quoting *Estate of Thomson ex rel Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008)).
[46] *Anwar*, 876 F.3d at 849.
[47] *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002).
[48] *Id.*
[49] *Third Nat. Bank*, 882 F.2d at 1091.

-8-

Case No. 1:20-cv-2183
Gwin, J.

to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts."[50]

The issue is close. Plaintiff PFG franchised Petty Marketing. During that franchise relationship—one that ended thirteen months before Defendant Rizzi left PFG—Petty Marketing worked with Rizzi. But for the Ohio franchise relationship, Petty Marketing would not have contact with Petty Marketing or Rizzi.

Although close, PFG alleges sufficient facts to show that this case "arises from" Petty Marketing's Ohio contacts. Working from PFG's version of events, Petty Marketing's Ohio contacts have a "substantial connection" with PFG's cause of action.[51] Petty Marketing's and Rizzi's relationship developed and deepened during the franchise agreement. That relationship purportedly culminated in Petty Medical's decision to "poach" Rizzi, the very transaction PFG now challenges in this suit.[52] Although nominally independent, Petty Marketing arguably contributed to the claimed interference with PFG and Rizzo's non-compete agreement.

PFG's facts approach the threshold of actual causation and allege close ties between Petty Marketing's "contacts with the forum state" and "the operative facts of the controversy."[53]

3. *Reasonableness.*

---

[50] *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996).
[51] *Third Nat. Bank*, 882 F.2d at 1091.
[52] Doc. 5 at 4.
[53] *CompuServe, Inc.*, 89 F.3d at 1267; *see also Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 909 (6th Cir. 1988) (holding that defendants were subject to Michigan jurisdiction in a discrimination suit because defendants' out-of-state discrimination against plaintiff was "based at least in part upon what [Defendant] learned about [Plaintiff] in Michigan").

Case No. 1:20-cv-2183
Gwin, J.

With the first two requirements down regarding Petty Marketing, it is presumptively reasonable to exercise specific jurisdiction over Petty Marketing.[54] Short of a compelling unreasonableness showing by Petty Marketing, the Court should exercise specific jurisdiction.[55]

Factors relevant to the reasonableness inquiry include: (1) the burden on the defendant, (2) the interest of the forum state, (3) the plaintiff's interest in obtaining relief, and (4) the interest of other states in securing the most efficient resolution of controversies.[56]

Other than reciting the two previously discussed elements of the specific jurisdiction test, Petty Marketing provides no reason why requiring them to defend the present suit in Ohio would be unreasonable. Given Petty Marketing's franchise history, there is no significantly greater burden. Ohio has an interest in protecting Ohio corporations and citizens. Moreover, no state's courts have a superior claim to hear this case.

This Court's jurisdiction over Petty Marketing is therefore consistent with due process.

### III.    CONCLUSION

For these reasons, this Court has personal jurisdiction over Petty Marketing but not over Petty Medical. The Court therefore **GRANTS** Petty Medical's dismissal motion and **DENIES** Petty Marketing's dismissal motion.

IT IS SO ORDERED

Dated: December 14, 2020            *s/    James S. Gwin*
                                    JAMES S. GWIN
                                    UNITED STATES DISTRICT JUDGE

---

[54] *Lanier*, 843 F.2d at 910.
[55] *See Burger King*, 471 U.S. at 477 ("[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.").
[56] *Bird*, 289 F.3d at 875 (quoting *CompuServe, Inc.*, 89 F.3d at 1268).